UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| United States of America,<br><br>      Plaintiff,<br><br>   v.<br><br>David McCarthy,<br><br>      Defendant. | No. 1:22-cr-00491-NRM-1<br><br>Statement of Reasons Pursuant to<br>18 U.S.C. § 3553(c)(2) |

NINA R. MORRISON, United States District Judge:

## I. Introduction

Defendant David McCarthy pled guilty to one count of willful failure to collect and pay over employment taxes to the Internal Revenue Service. As the owner of White Contracting and Renovations, Inc. ("WCR"), a construction business operating in the New York City metropolitan area, he caused WCR to fail to pay $612,829.27 in payroll taxes to the Internal Revenue Service. *See* Presentence Investigation Report ("PSR") at ¶¶ 3, 6. His conduct appears to be a significant aberration from his otherwise productive and law-abiding life, devoid of any previous criminal conduct.

Mr. McCarthy is sentenced to two years of probation and one hundred hours of community service. He must also pay a $100 special assessment and $612,829.27 in restitution. *See* Sentencing Hearing Transcript ("Hr'g Tr."), May 4, 2023.

### A. Instant Offense: Willful Failure to Collect and Pay Over Employment Tax

Defendant was charged with willful failure to collect, truthfully account for, and pay over to the IRS Federal Insurance Contributions Act ("FICA") taxes, in violation of 26 U.S.C. § 7202. PSR ¶ 1. Between 2014 and 2017, Mr. McCarthy caused his company, WCR, to file Forms 941 in which he understated the gross wages paid to WCR employees in order to avoid reporting the full amount of FICA taxes that WCR owed. PSR ¶¶ 6, 8. In total, WCR failed to pay a total of $612,829.27 in payroll taxes. *Id.* ¶ 8.

### B. Investigation

The IRS began investigating in 2018. McCarthy "promptly indicated his willingness to accept accountability for his conduct and the portion of payroll tax loss attributable to his . . . company" and "assisted the government in its effort to determine the amount." Gov's Sent. Submission at 2. Mr. McCarthy self-surrendered on December 15, 2022. PSR ¶ 8.

### C. Guilty plea

On December 15, 2022, Mr. McCarthy waived indictment and pled guilty to the sole count of the Information. That count charges that on or about January 31, 2018, the Defendant failed to collect, truthfully account for, and pay over to the IRS FICA taxes due and owing to the United States on behalf of WCR, in violation of 26 U.S.C. § 7202. PSR ¶ 1.

### D. Sentencing

A sentencing hearing was conducted on May 4, 2023.

## II.     Offense Level, Category, and Sentencing Guidelines Range

The applicable statute does not provide for a mandatory minimum term of imprisonment. The maximum term of imprisonment is five years. *See* PSR ¶ 58.

The parties and the Probation Department agree on the applicable Guidelines range. This Court concurs. Defendant's criminal history category is I. PSR ¶ 26. The base offense level is 20. *Id.* ¶ 13. The offense level was decreased by two points for the defendant's acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and reduced by an additional point pursuant to U.S.S.G. § 3E1.1(b) for notifying the government in a timely manner of his intention to enter a plea of guilty. *See* PSR ¶¶ 20–21; *see also* Hr'g Tr., May 4, 2023. The adjusted offense level is 17, yielding a guidelines sentencing range of 24 to 30 months. *See* PSR ¶ 59; *see also* Hr'g Tr., May 4, 2023.

Pursuant to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245–46 (2005), the Guidelines are advisory; a sentencing court may depart from the Guidelines in the interest of justice as well as by application of the factors set forth in 18 U.S.C. § 3553(a). *See also United States v. Cavera*, 550 F.3d 180, 189 (2d Cir. 2008) (en banc) ("It is now, however, emphatically clear that the Guidelines are guidelines—that is, they are truly advisory."); *Gall v. United States*, 552 U.S. 38, 50 (2007) (noting that a court "may not presume that the Guidelines range is reasonable [but] must make an individualized assessment based on the facts presented" (citation omitted)).

### III. Applicable Law

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in 18 U.S.C. § 3553(a)(4), the court shall indicate the specific reasons for imposing a different sentence. *See* 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.*

"A non-Guidelines sentence requires a written statement of reasons that lays out the justification for a non-guidelines sentence with specificity." *United States v. Seabrook*, 968 F.3d 224, 235 (2d Cir. 2020) (internal quotation marks and citation omitted). The statement should demonstrate that the court "considered the parties' arguments and that it has a reasoned basis for exercising [its] own legal decisionmaking authority." *Cavera*, 550 F.3d at 193 (internal quotation marks and citation omitted).

The "parsimony clause" of Section 3553(a) instructs district courts to impose a sentence "sufficient, but not greater than necessary," to achieve the goals outlined in Section 3553(a)(2). *See United States v. Jenkins*, 854 F.3d 181, 190 (2d Cir. 2017).

### IV. 18 U.S.C. § 3553(a) Considerations

The Court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). As stated on the record, a custodial sentence is unnecessary in this case. *See* Hr'g Tr., May 4,

2023. Mr. McCarthy was born in 1979, in Cork, Ireland. PSR ¶ 31. Mr. McCarthy grew up the youngest of his eleven siblings, in a family of modest means. PSR ¶ 32–33; Hr'g Tr., May 4, 2023. Mr. McCarthy graduated from high school in Ireland. PSR ¶ 46. Mr. McCarthy came to the United States as a young man, along with his partner, whom he married shortly after arriving in this country. PSR ¶ 35, 37; Hr'g Tr., May 4, 2023. They have been married for 18 years and have four children, ages 16, 11, 9, and 7. PSR ¶ 35. Mr. McCarthy's wife does not work outside the home. *Id.* Mr. McCarthy's family relies on him for financial support. *Id.*; Hr'g Tr., May 4, 2023. Mr. McCarthy is active in his community, with friends and neighbors attesting that he served as a consistent and meaningful source of support to them, including during times of tragedy in their lives when others in the community failed to do nearly as much. PSR ¶ 36; Hr'g Tr., May 4, 2023.

Mr. McCarthy has extremely close family ties and is very involved in his children's lives: he coaches his daughters' soccer team, regularly takes his son to soccer practice and tournaments, attends his children's other school and extracurricular events, and handles a considerable share of day-to-day parenting duties even while working outside the home. PSR ¶ 36; Hr'g Tr., May 4, 2023. It is clear that even a brief term of incarceration would impose substantial harm on Mr. McCarthy's children, with whom he is deeply bonded. The submissions received by the Court indicate that his 16-year-old son would be particularly affected if his father were to be absent from his life during this critical period in his adolescence. *See* PSR ¶ 35.

The Court credits Mr. McCarthy's representation that he never intended to violate the law over the long term, but instead found himself trapped in a vicious cycle after he began to pay his employees in cash and was unable to end the fraud without fear of detection; as a result, it was on some level a "relief" when the fraud was detected, Def.'s Submission at 3, and immediately began to cooperate with investigators at that time. Hr'g Tr., May 4, 2023.

For the reasons stated on the record, a custodial sentence is unnecessary to serve the purposes of 18 U.S.C. § 3553(a). The defendant has demonstrated genuine remorse for his conduct, and a desire to work to repay the amount he owes the government in full. Hr'g Tr., May 4, 2023. Mr. McCarthy has already suffered greatly as a result of this offense, losing his business that he spent his career working to build; as noted in the submissions received by the Court, even before he was charged with the instant offense, the revelation of the ongoing investigation led his contractors and suppliers to take their business elsewhere, and he was forced to cease operations at WCR. *Id.* He credibly described to the Court experiencing significant shame and embarrassment after his fraud was detected and made known in his community, at one point losing "the will to live" before his trajectory changed. *Id.*

Moreover, the restitution order that he agreed to at the time of his plea is substantial, particularly relative to his current financial circumstances. *Id.* Mr. McCarthy will likely need to spend the rest of his working life paying back the Government—an additional blow to his financial status. *Id.* Nevertheless, Mr.

McCarthy has already made efforts to comply with this restitution order, paying back $100,000 prior to his sentencing. *Id.*

By all accounts, this offense, despite its duration, was an isolated incident inconsistent with Mr. McCarthy's general character. *Id.* And immediately after his fraud was detected, Mr. McCarthy cooperated fully with the Government and worked to assist the investigators in calculating the precise amount of tax loss. *Id.*

The court has considered the statutorily delineated goals of general and specific deterrence, 18 U.S.C. § 3553(a)(2)(B), as well as the need for the sentence imposed "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." *Id.* § 3553(a)(2)(A). The goals of general deterrence and just punishment are served by this sentence: the offense has had a ruinous impact on Mr. McCarthy's life, and he is now subject to a very significant financial penalty. *Cf. United States v. Mateo*, 299 F.Supp.2d 201, 209–10 (S.D.N.Y.2004) ("There is more to the concept of just punishment and deterrence of the particular individual than the temporal and physical hardships imposed by a sentence as measured by the length of time in prison pre-specified by a guidelines range. In fact, beyond the offender's actual deprivation of liberty when incarcerated, a host of other penalties always attend criminal conviction . . . .").[1]

---

[1] The Court also notes that research shows the data on the effect of harsh sentences, including but not limited to incarceration, as a general deterrent is mixed at best. *See generally* Daniel S. Nagin, *Deterrence in the Twenty-First Century*, 42 Crime & Just. 199, 201 (2013) ("[T]he deterrent effect of . . . the

Moreover, although this sentence is non-custodial, it includes probation, which "substantially restrict[s an individual's] liberty." *Gall v. United States*, 552 U.S. 38, 48 (2007). The court has considered specific deterrence, but concludes that, given Mr. McCarthy's lack of criminal history, his early and complete cooperation, and his expressions of shame and remorse, any term of incarceration would be far greater punishment than is necessary to achieve this end.

Further, while all sentencing is and must be individualized, other courts have recognized that non-custodial sentences are appropriate for similar offenses and defendants with comparable facts and circumstances, another relevant factor under Section 3553(a)(6) ("[T]he need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]"). *See, e.g.*, *United States v. Reitzenstein*, No. 15-cr-0643, 2016 WL 1745672, at *1, 3 (E.D.N.Y. May 2, 2016) (sentencing defendant to three years of probation for one count of violating 26 U.S.C. § 7202); *United States v. Moore*, 344 F. App'x 767, 769 (3d Cir. 2009) (affirming a sentence of five years of probation for a defendant convicted of violating 26 U.S.C. § 7201).

Ultimately, the harms that would be caused by a prison sentence far outweigh the benefits here. Mr. McCarthy's family would undoubtedly suffer by his

---

certainty of punishment is far more convincing and consistent [than the deterrent effect of ] severity of punishment."); Valerie Wright, The Sentencing Project, *Deterrence in Criminal Justice: Evaluating Certainty vs. Severity of Punishment*, 1 (2010)) ("Research to date generally indicates that increases in the *certainty* of punishment, as opposed to the *severity* of punishment, are more likely to produce deterrent benefits.").

absence, and the Government would be less likely to recover the restitution it seeks, unnecessarily burdening the taxpayer.

## V. Sentencing

In light of the nature of the offense committed and the characteristics of the defendant, the Court sentences Mr. McCarthy to probation for a term of two years and 100 hours of community service. Hr'g Tr., May 4, 2023. A $100 special assessment is imposed. Pursuant to the plea agreement, restitution in the amount of $612,829.27 is ordered, due immediately, but payable on the time frames and under the conditions set forth in the Judgment. The Court waives interest, finding that Defendant has no ability to pay. 18 U.S.C. § 3612(f)(3)(A). Further, no fine is imposed given Defendant's inability to pay.

## VI. Conclusion

The court has considered all relevant elements of the Sentencing Guidelines and statutes. The court has given respectful consideration to the Sentencing Commission's policy statements and all of the Section 3553(a) factors to ensure that it is imposing a sentence "sufficient, but not greater than necessary, to comply with the purposes" of sentencing. 18 U.S.C. § 3553(a).

SO ORDERED.

   /s/ *Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: May 30, 2023
       Brooklyn, New York